**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CHANDA NETTLES-WALKER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:15cv00023 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.   Introduction**

Plaintiff Chanda Nettles-Walker applied for Supplemental Security Income on April 17, 2011, asserting that she was under a disability. Her application worked its way through the Social Security Administration's initial proceedings where it was denied. It then fell to Administrative Law Judge (ALJ) Amelia G. Lombardo to determine whether Plaintiff was eligible to receive benefits. After a hearing, during which Plaintiff testified, ALJ Lombardo issued a written decision denying Plaintiff's application. The ALJ found that although Plaintiff had back problems – namely, degenerative disc disease in her lumbar spine and mild degenerative disc disease in her cervical spine – plus diabetes mellitus and an affective

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

mood disorder with both depressive and anxiety features, she was not under a benefits-qualifying "disability" as defined in the Social Security Act, 42 U.S.C. §1382c. (Administrative Record (AR) at 17-32).

The case is before the Court upon Plaintiff's Statement of Errors and Supplemental Memorandum and Exhibits (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), the Administrative Record (which has not been filed electronically), and the record as a whole.

Plaintiff contends that ALJ Lombardo failed to properly evaluate the medical source's opinions and the mental-health record. She seeks a remand to the Social Security Administration for payment of benefits or further proceedings. The Commissioner maintains that there is no error in ALJ Lombardo's decision and no need for a remand.

**II.    Background**

    **A.    Plaintiff and Her Testimony**

On the date of the ALJ's decision, Plaintiff was age 41 and thus considered a younger person under Social Security Regulations. 20 C.F.R. § 416.963(c). She completed the 10th grade in high school and worked in the past as a hairdresser.

During her testimony before ALJ Lombardo, Plaintiff explained that she cannot work because of her back problems. She has struggled with back problems since she was involved in a car accident at age 13. The older she gets, the worse her pain gets. She has pain in her lower back, upper back, shoulders, and neck. She has never had back surgery.

She described her shoulder pain as "really severe." (AR at 617).

Plaintiff also has Type II diabetes. She testified that diabetic neuropathy causes her "really severe" sharp pain in her feet, hands, legs, and left arm. *Id*. at 615. She explained, "[I]t always feels like a bunch of pins going up and down my arm into my finger tips...." *Id*. at 616. She does not need insulin to treat her diabetes; she instead takes oral medication such as Metformin. At the time of the ALJ's hearing, Plaintiff was having difficulty controlling her blood-glucose levels.

Plaintiff testified that she cannot walk far at all because of the pain in her back, legs, and feet. She estimated she "could walk from [her] door maybe down the street a couple of houses and back before [she is] in serious pain." *Id*. She can stand for about 45 minutes before the "pressure gets too heavy on [her] back and [her] feet." *Id*. She can't sit for too long without the pain getting unbearable, requiring her to stand a little bit. She also cannot lie down for long before the pain gets unbearable. She can lie down and sleep at night if she takes medication. Medication "eases the pain for a little while ...." *Id*. at 619. The most she can lift at one time is a gallon of milk, which is about 8 pounds.

At the time of the ALJ's hearing, Plaintiff was receiving mental-health treatment once a month at Day-Mont Behavioral Health Care, Inc. She gets very depressed and sad about things that have happened to her. When this happens, her chest tightens up and hurts. Before she began treatment at Day-Mont, she received mental-health treatment from other sources – psychologist Dr. Flexman in 2008 and Advanced Therapeutics from 2009 to 2011.

3

Plaintiff is not able to do any household activities, like cleaning or cooking. Her mother takes care of those things. During a typical day, Plaintiff explained, she stays upstairs and kind of lies around. She limits herself like this because of her pain. She might try to read a book. But she has not been able to finish a book because her eyes start bothering her (due to diabetes, she has been told). She sometimes takes a bath; the warm water eases her pain for a little while.

  B. <u>**Medical Information and Opinions**</u>

Plaintiff's treating physician Dr. Nwokoro completed a form in June 2011 indicating that Plaintiff's medical problems are "longstanding" and her health status is "deteriorating." (AR at 380). Dr. Nwokoro opined that Plaintiff could stand/walk for no more than 3 hours per workday, 30 minutes uninterrupted. She could sit for 4 to 5 hours in a workday, but only 45 minutes uninterrupted. *Id*. at 382. She was restricted to lifting/carrying up to 5 pounds frequently and 10 pounds occasionally. Her ability to bend was "markedly" impaired and her ability to make repetitive foot movements was "extremely" limited. *Id*. at 381. Dr. Nwokoro concluded that Nettles-Walker was unemployable at that time. *Id*.

Dr. Nwokoro completed a Medical Assessment of Ability to Do Work-Related Activities in April 2013. (AR at 510-14). He indicated that Plaintiff suffers from degenerative disc disease that has resulted in bilateral upper extremity pain. Dr. Nwokoro again opined that she is restricted to lifting/carrying up to 5 pounds frequently and 10 pounds occasionally. He noted that her diabetic neuropathy causes chronic pain in her feet

4

and muscle spasms that limit her ability to stand/walk and handle/feel. (AR at 511-12). Dr. Nwokoro opined that Plaintiff could now stand/walk for 1 to 2 hours per workday and only 15 minutes without interruption. *Id*. at 511. Based on physical examination and radiologic imaging, she can only sit for 2 to 3 hours per workday and not more than 30 minutes uninterrupted. Dr. Nwokoro further opined that she can never climb, balance, stoop, crouch, kneel, or crawl. *Id*. at 512. Her vision and reaching ability are also restricted. Dr. Nwokoro cited evidence of degenerative joint disease of the shoulder, which also negatively impacts her ability to handle/feel. *Id*. He concluded that Plaintiff is no longer able to be perform even light or sedentary work. *Id*.

In July 2013, Dr. Nwokoro opined that Plaintiff's ability to bend and to engage in repetitive foot movements are "markedly" limited, and he again concluded that she is unemployable for a period of 12 months or more. *Id*.

In September 2011, Dr. McCloud reviewed Plaintiff's medical record for the Ohio Bureau of Disability Determinations. Dr. McCloud opined that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. *Id*. at 41. Dr. McCloud concluded that Plaintiff could frequently climb ramps/stairs, occasionally climb ladders/ropes/scaffolds, occasionally stoop, frequently crouch (including bending at her knees), and occasionally crawl. Dr. McCloud explained, "clt [Plaintiff] does have diabetes however no evidence of complication. clt does have [history] of back condition but no evidence of nerve damage."

*Id*. at 42. In December 2011, Dr. Das reviewed the record for the Ohio Bureau of Disability Determination and agreed with Dr. McCloud. *Id*. at 52-53. Dr. Das explained, "clt does have diabetes however no evidence of complication. The findings complete the medical portion of the disability determination." *Id*. at 53.

A detailed description of the remaining medical records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both parties and the ALJ have discussed the pertinent records in detail.

### III.    The "Disability" Requirement and ALJ Lombardo's Decision

The Social Security Administration provides Supplemental Security Income to indigent individuals, subject to several eligibility requirements. Chief among these is the "disability" requirement. To receive Supplemental Security Income an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who have a medically determinable physical or mental impairment that is severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a disability, and thus eligible for SSI, ALJ Lombardo considered the evidence under the 5 Step sequential-evaluation procedure mandated by regulation. *See* 20 C.F.R. §416.920(a)(4).

At the first several Steps, ALJ Lombardo concluded that (1) Plaintiff had not engaged in substantial gainful activity after the date she filed for benefits (April 17, 2011); (2) she has the severe impairments of degenerative disc disease in her lumbar pine, mild degenerative disc disease in her cervical spine, diabetes mellitus, and an affective mood disorder with depressive and anxiety features; and (3) her impairments did not meet or equal the criteria of an impairment in the Listings.[2] (TR at 20-24).

At Step 4 of the sequential evaluation, ALJ Lombardo assessed Plaintiff's residual functional capacity, or the most she could do in the workplace despite her physical and mental limitations. *See* 20 C.F.R. § 416.945(a); *see also* Social Security Ruling 96–8p, 1996 WL 374184. ALJ Lombardo found:

> [Plaintiff] has the residual functional capacity to perform light work ... with the following additional limitations: standing or walking no more than four hours during any given eight-hour day; no more than occasional stooping, crouching, crawling, or kneeling; no work at unprotected heights or around moving or dangerous machinery; simple repetitive tasks involving low stress (*i.e.,* no assembly-line production quotas or fast-paced duties); no more than occasional contact with the general public, co-workers, or supervisors.

(TR at 24-25). Considering these limitations, the ALJ further found that Plaintiff could not perform her past relevant work as a hairdresser.

At Step 5, the ALJ concluded that given Plaintiff's "younger" age, her limited education, her work experience, and her residual functional capacity, she remained able to

---

[2] The Social Security Administration's Listing of Impairments is found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

perform a significant number of jobs available in the national economy.  This, in the end, led ALJ Lombardo to find that Plaintiff was not under a benefits-qualifying disability.

**IV.    Judicial Review**

The Social Security Administration's determination of disability – typically embodied in an ALJ's written decision – is subject to review in this Court along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r. of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at

241.

V.  **Discussion**

    A.  **Medical Source Opinions**

Plaintiff contends that the ALJ failed to follow the Social Security Administration's own regulatory requirements for weighing medical-source opinions, particularly when giving "no weight whatsoever" to treating physician Dr. Nwokoro's opinions. Plaintiff also asserts that the ALJ's decision provides no indication she applied factors required by the Regulations to the opinions of the non-examining doctors, Drs. McCloud and Das, other than the single comment that their opinions "are well founded and are given great weight." (TR at 27).

The Commissioner argues that the ALJ provided good reasons for placing little weight on Dr. Nwokoro's opinions. The Commissioner further argues that the regulations did not require the ALJ to discuss each of its treating-source factors in order to provide good reasons for not fully crediting Dr. Nwokoro's opinions. And, the Commissioner maintains that the opinions provided by Drs. McCloud and Das were supported by Plaintiff's contemporaneous treatment notes and "evidence throughout the record." (Doc. #8, PageID at 85. It was therefore reasonable for the ALJ to place great weight on these opinions, according to the Commissioner.

Social security regulations recognize several different types of medical sources: treating physicians, nontreating yet examining physicians, and nontreating/record-reviewing

9

physicians.  *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (additional citations omitted).  To effect this hierarchy, the Regulations adopt the treating physician rule.  *See id.* at 375; *see also Rogers*, 486 F.3d at 242.  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. §404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.  If both conditions do not exist, the ALJ's review must continue:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In the event the ALJ decides to reject or discount a treating physician's opinion, the

ALJ must adhere to an additional procedural requirement by providing "good reasons" for viewing unfavorably the treating physician's opinions. *Rogers*, 486 F.3d at 242; *see* 20 C.F.R. §416.927(d)(2).

> These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Gayheart*, 710 F.3d at 376 (quoting, in part, *Wilson*, 378 F.3d at 544).

The parties disagree about how much weight ALJ Lombardo placed on Dr. Nwokoro's opinions. Their disagreement arises because the ALJ stated 2 times in her decision that Dr. Nwokoro's opinions were due "little weight" but also parenthetically wrote that Dr. Nwokoro's opinions were "in fact, entitled to no weight whatsoever." *Id*. at 26-27 (parentheses omitted). While this disparity is not helpful, in the present case it makes little difference because the ALJ's assessment of the medical source opinions is flawed in more ways.

The ALJ discounted Dr. Nwokoro's opinions by finding (1) Dr. Nwokoro provided no objective evidence or clinical findings to support his opinion that Plaintiff was extremely limited in her ability to engage in repetitive foot movements; (2) no other evidence supports Dr. Nwokoro's opinion about Plaintiff's extremely limited ability to repeatedly move her feet; (3) there is no evidence of diabetic neuropathy or radiculopathy that accounts for an

11

extreme limitation in her use of her lower extremities; (4) Plaintiff's treatment involved primarily conservative care; (5) "[c]linical testing has not revealed any impairment of a severity that would be expected to cause the degree of restriction indicated by Dr. Nwokoro"; (6) treating physician Dr. Fleishman believed that Plaintiff had no functional impairment of a severity that would cause the degree of restriction identified by Nwokoro; (7) although Dr. Fleishman's opinion was in 2010, subsequent medical records document no significant deterioration in Plaintiff's condition; (8) there is no evidence of diabetic complications, as Dr. McCloud noted; (9) Plaintiff does have history of back problems but without evidence of nerve damage; and (10) "[Ohio] BDD physicians reviewing physician Dr. Das found the opinion of Dr. Nwokoro to be without substantial support from other evidence of record and to be non-persuasive Exhibit 2A at 11 [AR at 54]." (AR at 27).

In contrast to the scrutiny the ALJ applied to Dr. Nwokoro's opinions, the ALJ credited the opinions of Drs. McCloud and Das merely concluding that their opinions "are well founded ...." (AR at 27). The ALJ provides no indication that she weighed the opinions of Drs. McCloud and Das under the factors mandated by Social Security regulations. *See* 20 C.F.R. §416.927(c). "A more rigorous scrutiny of the treating source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulations require." *Gayheart*, 710 F.3d at 379 (citing, in part, Social Security Ruling 96-6p, 1996 WL 374180, at *2 (July 2, 1996)). "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given

12

to the opinions of a State agency medical . . . consultant[.]"  20 C.F.R. § 404.1527(e)(2)(ii).  The ALJ wholly failed to explain why she found the opinions of Drs. McCloud and Das "well founded" and due "great weight."  (AR at 27).

Additionally, contrary to the ALJ's belief, the objective evidence confirms the treating-source opinions, including an MRI scan of the lumbar spine which revealed disc protrusion at the L5-S1 level with some S1 nerve root effacement, which Patrick Pagur, D.O. opined is "most likely the cause of the patient's current left sided symptoms."  (AR at 290).  An x-ray dated January 14, 2013 indicated a "well-corticated bony ossicle in the inferior aspect of the left acromion," which "may be related to previous trauma or degenerative change."  (AR at 487).  A CT scan of the cervical spine in February 2013 revealed disc-space narrowing at the C4-5 and C5-6 levels.  (AR at 502).  The objective evidence also indicates some cervical radiculopathy.  (AR at 496).

Dr. Nwokoro's opinions are also consistent with the other substantial evidence.  Treating therapist Audrey Violand concluded that Plaintiff is unemployable for a period of at least 12 months or more.  (AR at 400).  In 2011, vocational rehabilitation organization Capabilities completed a comprehensive work assessment of Plaintiff after a 5-month observation period. (AR at 326-332).  The assessment indicated that although she "is willing to work" and does some things well, Plaintiff "will be unable to work a full day."  (AR at 332).

Even consultative examining psychologist Dr. Rosenthal observed that Plaintiff was

13

"oppositional" during the interview and opined that she would likely isolate herself from others whenever possible. (AR at 388). Dr. Rosenthal also opined that Plaintiff would likely "get angry and frustrated easily in response to work pressures." (AR at 388). He concluded that based on her presentation during the interview, "she might walk off a job or not show up for work if she felt angry or agitated with work pressures." (AR at 388.)

When addressing Dr. Nwokoro's opinion, the ALJ noted, "There are other references in the medical record to possible exaggerated pain complaints. (see, for example, Exhibit 31F at 11)." (AR at 26). The ALJ overlooked or ignored the context in which this reference to "possible exaggerated pain complaints" appears. The page of the record cited by the ALJ indicated there "might be a possible psychological overlay to her pain symptoms ...." (AR at 569). The ALJ erred by focusing only on the indication of possible exaggerated pain complaints when her exaggerations, if any, may be a symptom or result of her psychological impairments. *Cf. Brooks v. Comm'r of Soc. Sec.*, 531 Fed. App'x 636, 641 (6th Cir. Aug. 6, 2013) ("Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.")(quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)) *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.").

Accordingly, Plaintiff's Statement of Errors is well taken.[3]

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's challenge to the ALJ's credibility determination or Plaintiff's submission of additional

14

### B. Remand is Warranted

Remand is warranted when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff's credibility lacking, *Rogers,* 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted "only where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking." *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) (quoting *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

---

evidence is unwarranted.

15

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence 4 of §405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim to determine anew whether she was under a benefits-qualifying disability, including, at a minimum, a re-assessment of Plaintiff's residual functional capacity, and a re-consideration of the evidence at step 5 of the sequential evaluation.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Chanda Nettles-Walker was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report and a Decision and Entry adopting this Report; and

4. The case be terminated on the docket of this Court.

November 10, 2015

                                                s/Sharon L. Ovington
                                                  Sharon L. Ovington
                                        Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).